UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

COREY MANNING,

        Plaintiff,

v.

JAMES SCHIEBNER et al.,

        Defendants.

_____/

Case No. 1:24-cv-578

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McLaughlin and Goostrey. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Schiebner, Winger, and Kludy: official capacity claims, Eighth Amendment claims, and § 1983 civil conspiracy claims. Plaintiff's First Amendment retaliation claims against Defendants Schiebner, Winger, and

Kludy in their individual capacities premised on Plaintiff's transfer to KCF will remain in the case. Plaintiff's motion to appoint counsel (ECF No. 4) will be denied.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan, and the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following MCF staff in their individual and official capacities: Warden James Schiebner, Deputy Warden Jeanine Winger, Assistant Deputy Warden J. Kludy, Warden's Administrative Assistant April McLaughlin, and Inspector Jared Goostrey. (Compl., ECF No. 1, PageID.1, 3.)

In Plaintiff's complaint, he alleges that in November of 2023, he submitted questions for "the MCF Warden's Forum Agenda," which "raised concerns about the administration permitting custody staff to restrain inmates beyond what policy allows." (*Id.*, PageID.5.) Defendant Schiebner "instructed" Defendant McLaughlin "to remove that question from the agenda . . . to prevent the issue [from] being presented to the Director's office on behalf of the MCF population." (*Id.*)

At the November 2023 Warden's Forum meeting, Plaintiff "asked the warden why certain questions were not on the official agenda," and in response, "[h]e stated that just because [inmates] submit questions doesn't mean that they will be placed on the agenda." (*Id.*) Plaintiff claims that "[h]e then began to berate [Plaintiff], accusing [Plaintiff] of having an ulterior motive," and "he finished by telling [Plaintiff], 'Don't let that type of sh[**] happen anymore!'" (*Id.* (asterisks added).) Defendant Winger then "spoke up and voiced her displeasure with [Plaintiff] and accused

2

[Plaintiff] of improprieties, stating that [Plaintiff] was in possession of exempt policies and that she was going to investigate to see who had given the alleged policy to [Plaintiff]." (*Id.*)

On December 6, 2023, Plaintiff claims that a non-party transportation officer told Plaintiff that "the warden had told [the officer] that [Plaintiff] had 'pissed him (the warden) off' and that he wanted [Plaintiff] 'transferred up north for Christmas.'" (*Id.*) Thereafter, on December 12, 2023, Plaintiff "received a memorandum from the warden's administrative assistant in which she ordered [Plaintiff] to return all material relevant to the Warden's Forum and inform[ed] [Plaintiff] that [he] was being terminated from [his] position." (*Id.*)

Plaintiff claims that on December 15, 2023, Defendant Kludy told a non-party unit officer "that they were going to transfer [Plaintiff] because [Plaintiff] was making a nuisance of [him]self on the Warden's Forum as a unit representative." (*Id.*)

On December 21, 2023, Plaintiff spoke to Defendant Winger, and he apologized "if [he] had offended [Winger] with [his] questions." (*Id.*, PageID.6.) In response, Defendant Winger stated: "Maybe you should have thought about that before throwing rocks at the proverbial hornet's nest." (*Id.*) Plaintiff explained that he did not think "it warranted [him] being transferred," and Defendant Winger "responded, 'We've already decided that. New year, new start. This will give you time and space to consider your future endeavors.'" (*Id.*)

On December 26, 2023, Defendant Schiebner conducted rounds with Defendant Kludy in Plaintiff's unit. (*Id.*) Plaintiff claims that when Defendant Schiebner saw Plaintiff "he smirked and said, 'Still here, huh?'" (*Id.*) In response, Plaintiff told Defendant Schiebner that Plaintiff "was only presenting questions that were relevant to the compound, which was [Plaintiff's] duty as a unit rep[resentative]." (*Id.*) Plaintiff also informed Defendant Schiebner that Plaintiff "had resigned [his] position as a housing unit rep[resentative] because [Plaintiff] didn't want to continue

3

being at odds with [Schiebner] and [Schiebner's] administration." (*Id.*) In response, Defendant Schiebner stated: "Well, it's a little too late for that, don't you think? At this point it's just better that we move on from you. We can't have you directing the agenda like that." (*Id.*) Defendant Kludy then stated "something to the effect that I 'shouldn't worry about it. You said we're not transferring people --- we're going to show you and everybody else that we do transfer people who aren't catching tickets and misbehaving. Run afoul of us and you'll be on the first thing smoking.'" (*Id.*)

On January 4, 2024, Plaintiff was transferred to KCF. (*Id.*) Plaintiff claims that "[a]s a direct result of this transfer [he] [wa]s unable to contact staff members who [he] worked for and who might speak on [his] character at [his] resentencing hearing." (*Id.*) Plaintiff also claims that he was "transferred further away from his seventy-three" year old mother "who can't travel long distances due to her [health conditions]," and that he "loss [sic] [his] prison job that paid [him] significantly." (*Id.*)

On January 5, 2024, Plaintiff was called to the prisoner counselor's office at KCF, and he was then strip searched. (*Id.*) While Plaintiff was at the prisoner counselor's office, his "area of control in the cube was ransacked" by a non-party KCF correctional officer. (*Id.*, PageID.6–7.) Plaintiff claims that a few days later, on January 10, 2024, a non-party KCF sergeant told him that "they had been ordered by the [non-party] KCF inspector to apprehend [Plaintiff], strip search [him] and search [his] area of control." (*Id.*, PageID.7.) Plaintiff asked why this had been ordered, and the non-party KCF sergeant said that the non-party KCF inspector "had told him that 'Inspector Goostrey called us and asked that we make sure you know that he was keeping his eyes on you,'" and that "[t]he inspector down there said you were a rebel-rouser, the kind of guy that likes to challenge everything you think is wrong with a prison." (*Id.*)

4

After setting forth the above factual allegations, in a separate section of Plaintiff's complaint, which he titled, "deliberate indifference," Plaintiff sets forth the following factual allegations regarding his receipt of medical care. Plaintiff states that on December 6, 2023, he had an offsite medical appointment, and "it was determined that [he] needed to see a surgical specialist to address the options for treating [his] pubalgia (sports hernia), and . . . that [he] needed injections in [his] right sacroiliac joint." (*Id.*) The following day, December 7, 2023, "requests were submitted for a general surgeon consult and the injections." (*Id.*) Plaintiff states that "[t]he injection was approved and the consultation deferred." (*Id.*) "Surgical consultations were again submitted on 12/12/23 which was reviewed and denied on 12/13/23, and again on 1/2/24." (*Id.*, PageID.7–8.)

Plaintiff states that on January 23, 2024, he "was transferred back to the Muskegon area," to LRF, "to accommodate [his] upcoming medical appointment," but the appointment had to be rescheduled "because [he] had missed the original date due to the January 4, 2024 transfer." (*Id.*, PageID.8.) After Plaintiff informed a non-party nurse about the matter, he was then scheduled to receive the injections at an offsite location. (*Id.*) Plaintiff claims that "[a]s a result of being transferred [he] missed [his] appointment to receive the back injection and [he was] . . . subjected to longer periods of pain unnecessarily." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to be free from retaliation and his Eighth Amendment right to receive adequate medical care. (*Id.*, PageID.5, 7.) Plaintiff also alleges that Defendants engaged in a civil conspiracy under § 1983. (*Id.*, PageID.5.) As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.10.) Plaintiff also asks for his "cost(s) in this suit." (*Id.*)

5

## II. Motion to Appoint Counsel

Plaintiff filed a motion requesting the appointment of counsel. (ECF No. 4.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that, at this time, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 4) therefore will be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).

Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.10.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and his official capacity claims are subject to dismissal for this reason alone.

Moreover, even if Plaintiff sought declaratory or injunctive relief, his official capacity claims would still be dismissed because the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881

(6th Cir. 1991). Here, Plaintiff is no longer confined at MCF, which is where he avers that Defendants are employed.

Accordingly, for these reasons, Plaintiff's official capacity claims against Defendants will be dismissed.

    **B.**    **First Amendment Retaliation Claims**

Plaintiff claims that Defendants violated his First Amendment rights by retaliating against him. (*See* Compl., ECF No. 1, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

    **1.**    **Protected Conduct**

With respect to the first element of a retaliation claim, the Sixth Circuit has held that a "plaintiff's assistance to other inmates in his role as a Warden's Forum representative was protected conduct" if "the plaintiff's assistance was necessary to help other inmates." *Berkshire v. Dahl*, 928 F.3d 520, 531–33 (6th Cir. 2019) (citations omitted). The Sixth Circuit explained that "an inmate does not have an independent right to help other prisoners with their legal claims," however, "one inmate assisting another 'is protected . . . when the inmate receiving the assistance would otherwise be unable to pursue legal redress.'" *Id.* at 533 (citations omitted); *see Cain v.*

9

*Palmer*, Nos. 22-1336, 23-1303, 2024 WL 1056214, at *2 (6th Cir. Mar. 7, 2024) (concluding that under the facts alleged, the plaintiff's "complaints at the warden's forum about an issue that affected not only himself, but also the general prison population constituted protected conduct" (citation omitted)).

Here, Plaintiff alleges that in November of 2023, as a unit representative, he submitted questions for "the MCF Warden's Forum Agenda," which "raised concerns about the administration permitting custody staff to restrain inmates beyond what policy allows." (Compl., ECF No. 1, PageID.5.) Plaintiff does not specifically allege that his question "was necessary to help other inmates" who might "otherwise be unable to pursue legal redress," *Berkshire*, 928 F.3d at 533 (citations omitted); however, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has alleged sufficient facts to show that he engaged in protected conduct.

2.   **Adverse Action**

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). In this action, the Court construes Plaintiff's complaint to allege that (i) his transfer to KCF and (ii) the search of his area of control at KCF constituted adverse actions.[1]

---

[1] The Court notes that, in his complaint, Plaintiff does not allege that his removal from the Warden's Forum constituted adverse action. Indeed, Plaintiff's complaint presents contradictory allegations regarding his position as a unit representative. In one part of the complaint, Plaintiff alleges that he was removed from his position, and in another part of the complaint, Plaintiff alleges that he resigned from his position. (*See* Compl., ECF No. 1, PageID.5, 6.) Under these circumstances, the Court concludes that, even if Plaintiff had intended to allege that his removal, or resignation, from the Warden's Forum constituted adverse action, based on the factual allegations in the complaint, Plaintiff has failed to show that this was in fact adverse action. *See Griffin v. Berghuis*, 563 F. App'x 411, 420 (6th Cir. 2014) ("We have not been directed to any

10

a.       **Transfer to KCF**

As to Plaintiff's transfer to KCF, ordinarily, transfers to the general population of another prison are typically not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, the Sixth Circuit held that transfer to administrative segregation or another prison's lockdown unit can be sufficient to constitute adverse action. *Hill*, 630 F.3d at 474–75. The *Hill* court determined that transfer to a lockdown unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts. Further, in *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009), the Sixth Circuit held that a threat to have a prisoner moved out of the unit so that he would lose his job, together with a threat to influence the warden to have the prisoner transferred to another institution far from his family, were sufficiently adverse to be actionable. *Id.* at 985. Although Plaintiff has by no means proven this aspect of his retaliation claim, at this stage of the proceedings, the Court assumes, without deciding, that based on the facts alleged by Plaintiff, his transfer to KCF constituted an adverse action. *See Cain*, 2024 WL 1056214, at *2.

b.       **Search of Area of Control at KCF**

Plaintiff alleges that on January 5, 2024, his "area of control in the cube [at KCF] was ransacked" by a non-party KCF correctional officer. (Compl., ECF No. 1, PageID.6–7.)

A cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves the cell in disarray and results in the

---

case holding that participation in a Warden's Forum is so valuable to a prisoner that its denial reasonably would deter the prisoner from engaging in protected conduct.").

confiscation or destruction of materials. *See Bell*, 308 F.3d at 606 (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Therefore, at this stage of the proceedings, the Court assumes that the search of Plaintiff's area of control at KCF constituted an adverse action.

### 3. Causal Connection

#### a. Defendant McLaughlin

With respect to Defendant McLaughlin, Plaintiff fails to show that McLaughlin had any involvement in the alleged adverse actions against Plaintiff.[2]

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In this action, Plaintiff fails to show that Defendant McLaughlin was involved in Plaintiff's transfer to KCF or the search of Plaintiff's area of control at KCF. Therefore, Plaintiff's First Amendment retaliation claim against Defendant McLaughlin will be dismissed.

#### b. Defendants Schiebner, Winger, and Kludy

As to Defendants Schiebner, Winger, and Kludy, Plaintiff does not allege that these Defendants had any involvement in the search of his area of control at KCF; however, he alleges that they were involved in his transfer to KCF. (*See* Compl., ECF No. 1, PageID.5–7.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although Plaintiff's allegations lack specificity as to these Defendants' involvement in Plaintiff's transfer, at this time, the Court will not dismiss Plaintiff's First Amendment retaliation claims against Defendants Schiebner, Winger, and Kludy premised on Plaintiff's transfer to KCF.

---

[2] As set forth herein, the Court concludes that Plaintiff has failed to show that his removal from the Warden's Forum constituted an adverse action. *See supra* note 1.

12

### c. Defendant Goostrey

Plaintiff does not allege that Defendant Goostrey had any involvement in Plaintiff's transfer to KCF; however, Plaintiff alleges that after his transfer to KCF, his area of control was searched, and Plaintiff believes that Defendant Goostrey had some involvement in this search. (*See* Compl., ECF No. 1, PageID.6–7.)

Specifically, Plaintiff claims that a few days after his area of control was searched at KCF, a non-party sergeant told him that "they had been ordered by the [non-party] KCF inspector to apprehend [Plaintiff], strip search [him] and search [his] area of control." (*Id.*, PageID.7.) When Plaintiff asked why this had been ordered, the non-party sergeant said that the non-party KCF inspector "had told him that 'Inspector Goostrey called us and asked that we make sure you know that he was keeping his eyes on you,'" and that "[t]he inspector down there said you were a rebel-rouser, the kind of guy that likes to challenge everything you think is wrong with a prison." (*Id.*)

Plaintiff seeks to hold Defendant Goostrey, an inspector at MCF, liable for the alleged retaliatory search of his area of control at KCF; however, Plaintiff alleges no facts showing that Defendant Goostrey was involved in this search. Plaintiff apparently believes that "Inspector Goostrey call[ing] . . . and ask[ing] that [KCF staff] make sure [Plaintiff] know[s] that he was keeping his eyes on [Plaintiff]," makes Defendant Goostrey liable for the search of Plaintiff's area of control, but nothing in the complaint suggests that Defendant Goostrey directed KCF staff to search Plaintiff's area of control, let alone that Defendant Goostrey had any knowledge of KCF staff's search. *See Griffin v. Klee*, No. 16-1586, 2016 WL 11859055, at *3 (6th Cir. Dec. 6, 2016) ("The motivations of non-decisionmakers cannot establish a causal connection in a retaliation case." (citing *Smith*, 250 F.3d at 1038; *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999))). Because Plaintiff fails to show that Defendant Goostrey had any personal involvement in the search of Plaintiff's area of control at KCF, Plaintiff fails to state a First Amendment retaliation

13

claim against Goostrey. Therefore, Plaintiff's First Amendment retaliation claim against Defendant Goostrey will be dismissed.

### C. Eighth Amendment Claims

Plaintiff alleges that Defendants violated his Eighth Amendment rights by interfering with his receipt of adequate medical care. (*See* Compl., ECF No. 1, PageID.7.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the

medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test. However, as explained below, Plaintiff alleges insufficient facts to show that the named Defendants were deliberately indifferent to his serious medical needs.

As an initial matter, when setting forth the factual allegations for his Eighth Amendment medical care claims, Plaintiff fails to name Defendants in that section of the complaint. (*See* Compl., ECF No. 1, PageID.7–8.) Where a person is named as a defendant without an allegation of specific conduct, the complaint, or claim, is subject to dismissal, even under the liberal

15

construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Moreover, even setting this issue aside, it appears that Plaintiff believes that his transfer to KCF prevented him from attending previously scheduled medical appointments, and Plaintiff seeks to hold Defendants liable due to their alleged involvement in the decision to transfer him. (*See* Compl., ECF No. 1, PageID.7–8.) To state an Eighth Amendment claim, a plaintiff must allege sufficient facts to show that each Defendant was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that each Defendant "also dr[e]w the inference." *Farmer*, 511 U.S. at 837. Plaintiff has not done so here because he fails to allege any facts to suggest that Defendants knew that Plaintiff had scheduled medical appointments or that his transfer would prevent him from having the same type of medical appointments when he was at KCF. Under these circumstances, Plaintiff fails to show that Defendants were aware of Plaintiff's serious medical needs, let alone that they were aware of his medical needs and disregarded them.

Accordingly, for these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants. Plaintiff's Eighth Amendment claims will be dismissed.

### D. Section 1983 Civil Conspiracy Claims

In Plaintiff's complaint, he references "conspiracy claims" (Compl., ECF No. 1, PageID.5), and the Court construes this reference to raise civil conspiracy claims under 42 U.S.C. § 1983.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff does not specifically allege that any "agreement" or "plan" existed between Defendants. (*See generally* Compl., ECF No. 1.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe discrete occurrences involving Defendants. Simply because Defendants each informed Plaintiff of their displeasure regarding his questions for the Warden's Forum does not show that they conspired to violate Plaintiff's constitutional rights. Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe discrete occurrences involving Defendants. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that each Defendant took allegedly adverse actions against him within a short period of time.

As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants, and instead, alleges that on discrete occasions, Defendants allegedly took actions against him, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis* (ECF No. 2) and will deny Plaintiff's motion to appoint counsel (ECF No. 4). Having conducted the review required by the PLRA, the Court determines that Defendants McLaughlin and Goostrey will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Schiebner, Winger, and Kludy: official capacity claims, Eighth Amendment claims, and § 1983 civil conspiracy claims. Plaintiff's First Amendment retaliation claims against Defendants Schiebner, Winger, and Kludy in their individual capacities premised on Plaintiff's transfer to KCF remain in the case.

An order consistent with this opinion will be entered.

Dated:   July 30, 2024                                    /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         United States District Judge